UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARCH INSURANCE COMPANY,<br><br>                Plaintiff,<br><br>    v.<br><br>SCOTTSDALE INSURANCE COMPANY, a foreign corporation; and NORTHWEST TOWER CRANE SERVICE, INC., a Washington Corporation,<br><br>                Defendants. | CASE NO. C09-0602 RSM<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

**I. INTRODUCTION**

This matter comes before the Court on Motion for Summary Judgment (Dkt. #30) brought by Plaintiff Arch Insurance Company ("Plaintiff"), and on Cross-motion for Partial Summary Judgment (Dkt. #34) brought by Defendant Scottsdale Insurance Company ("Defendant"). Plaintiff insurer claims in this action that Defendant insurer must compensate Plaintiff for its expenditures in defending the general contractor against liability connected to a

crane collapse. Defendant contends that it had no duty to defend the general contractor, and disputes the scope of Plaintiff's claims and the reasonableness of Plaintiff's expenditures.

## II. BACKGROUND

In November 2006 during the construction of the "Tower 333 project" in Bellevue, Washington, a crane collapsed causing one fatality and extensive property damage. Lease Crutcher Lewis ("LCL"), Plaintiff Arch's insured, was the general contractor on this project. LCL employed Northwest Tower Crane Service, Inc. ("NWTC") as a subcontractor on the project to erect, test, and dismantle the crane that collapsed. NWTC had a general liability insurance policy with Defendant Scottsdale at the time of the collapse. As alleged in this suit, LCL qualified as an "additional insured" under the Scottsdale policy and that policy is primary over any other policy for the additional insured, causing Scottsdale to be responsible to defend and indemnify LCL.

Arch tendered the defense of LCL to NWTC and Scottsdale. Scottsdale denied any duty to defend LCL. Arch defended LCL and now seeks equitable contribution from Scottsdale.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir.

1994) (*citing O'Melveny & Meyers*, 969 F.2d at 747). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

## IV. DISCUSSION

**A. Additional Insured Endorsement**

The interpretation of an insurance contract is a matter of law to be decided by a court. *McDonald v. State Farm Fire and Cas. Ins. Co*, 837 P.2d 1000 (1992). The first issue in this summary judgment order is whether Arch's insured, LCL, may be considered an "additional insured" under the Scottsdale policy held by NWTC.

**1. Primary or Excess Coverage**

In situations where multiple policies provide coverage, a court must determine whether the policies provide the same layer of coverage, or whether the policies provide multiple layers of coverage – i.e.; primary or excess coverage. THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 51.1 (Matthew Bender ed., 2nd ed. Lexis 2006) (citing *Millers Cas. Ins. Co. v. Briggs*, 665 P.2d 891 (1983)). In reading the policies together, if the policies clearly allocate the responsibility between the insurers on the basis of being primary or excess, then the primary insurer is liable for the full amount up to the policy limit before another excess insurer has a duty to pay. *Id.* (citing *Mission Ins. Co. v. Guarantee Ins. Co.*, 683 P.2d 215, 219 (1984)). Therefore, where it is determined that the policies in fact do provide multiple layers of coverage, it is not necessary to engage in an analysis in order to allocate and apportion cost among multiple insurers that provide the same layer of coverage.

In the case at hand, it is necessary to determine the relationship between the layers of coverage provided by Scottsdale and Arch. The subcontractor, NWTC, had primary insurance coverage with Scottsdale. The general contractor, LCL, had primary insurance coverage with Arch. (Dkt. #30 at 1-2). However, an endorsement to the Scottsdale policy includes as an

additional insured any organization for which NWTC is performing operations when NWTC and such organization have agreed in a written contract that the organization shall be added as an additional insured. (Dkt. #31, Ex. 2, at 12, ¶ 1.1.2(a)). Moreover, the endorsement states that an organization is an additional insured with respect to liability arising out of NWTC's ongoing operations performed for that insured. (Dkt. #31, Ex. 3, at 4). Per the endorsement, the status as an additional insured will end when NWTC's operations for that insured are complete. *Id.* The written contract between NWTC and LCL stated that the subcontractor's liability insurance shall be primary with respect to the general contractor, and that any other insurance maintained by the contractor shall be excess and not contributing. (Dkt. #31, Ex. 3, at 4).

In reading the policy and the language of the contract, the terms indicate that NWTC's Scottsdale policy was to be the primary insurer under certain circumstances. Rather than providing the same layer of coverage, which would permit apportionment among the multiple insurers, LCL's insurance (Arch) was "excess and not contributing" to NWTC's insurance (Scottsdale) with regard to liability arising out of NWTC's ongoing operations. (Dkt. #31, Ex. 3, at 4). If Arch incurred costs defending LCL from liability that arose from NWTC's "ongoing operations performed for [the additional] insured," then Scottsdale would be the primary insurer and hence would be responsible for those costs. (Dkt. #31, Ex. 3, at 4).

**2. The Meaning of "Arising Out of"**

Arch and Scottsdale dispute the meaning of the term "arising out of." The issue of whether LCL is an additional insured under the Scottsdale policy hinges on whether LCL incurred "liability arising out of [NWTC's] ongoing operations performed" for LCL. (Dkt. #31, Ex. 3, at 4). The "arising out of" language in the context of an additional insured was examined in *Equilon Enterprises v. Great American Ins. Co.,* 132 P.3d 758 (2006). The defendant insurance company argued that Shell was not covered as an additional insured because the

1  endorsement only covered *injuries* arising out of the distributor's operations. However, the
2  opinion states that the additional insured endorsement at issue in that case covered the broader
3  category of *liability* arising out of the operations. The *Equilon* decision noted that the "arising
4  out of" language of similar additional insured endorsements is broad. *Equilon Enterprises*, 132
5  P.3d at 761.

6  Rather than examine whether an injury actually occurred as a result of the policy holder's
7  operations, the crucial inquiry is whether, "facts, which if proven, impose liability within the
8  policy's coverage." *Equilon Enterprises*, 132 P.3d at 760 (citing *Unigard Ins. Col. v. Leven*, 983
9  P.2d 1155 (1999)). Therefore, if the claims alleged are clearly not covered by the policy, then
10 there is no duty to defend. *Id* (citing *Cle Elum Bowl Inc, v. North Pac. Ins. Co.*, 981 P.2d
11 (1999)). However, where the potential for liability is present due to a covered claim, an insurer
12 has a duty to defend based on the facts that could give rise to liability.

13 Similarly in the case at hand, Scottsdale argues that LCL cannot be an additional insured
14 because NWTC was not negligent in performance of its operations, and therefore liability did not
15 arise and could never have arisen out of NWTC's operations. This misconstrues the language of
16 the additional insured endorsement. It is not material that NWTC, the original holder of the
17 Scottsdale policy, was ultimately found not to be negligent. Instead, LCL was an additional
18 insured with respect to "liability arising out [NWTC's] ongoing operations performed for
19 [LCL]." (Dkt. #31, Ex. 3, at 4). Therefore, per the additional insured endorsement, Scottsdale
20 had a duty to defend LCL unless the alleged claims were clearly not covered under the policy.
21 Here, the potential for liability arose from NWTC's operations when the crane collapsed, even
22 though NWTC was found not to be negligent in causing the crane to collapse. Scottsdale's duty

23

24

to defend LCL was triggered, as set forth by the additional insured endorsement of the Scottsdale policy.

### 3. Meaning of "Ongoing Operations"

The language of the endorsement regarding the additional insured limited the insurance to liability arising out of the subcontractor's "ongoing operations for that insured." Defendant Scottsdale argues that NWTC's operations were not ongoing because the collapse of the crane rendered additional operations, notably the dismantling of the crane by NWTC, impossible. NWTC's operations specifically included the dismantling of the crane. (Dkt. #31, Ex. 2, Attachment B and C, at 21-28).

Washington courts have provided some guidance in determining whether operations are ongoing for purposes of interpreting additional insured endorsements. In *Hartford Ins. Co. v. Ohio Cas. Ins. Co.*, the Washington Court of Appeals adopted the language of a California decision interpreting the meaning of "ongoing operations." 189 P.3d 195, 202 (2008) (citing California decision, *Pardee Construction Co. v. Ins. Co. of the West*, 92 Cal.Rptr.2d 443 (2000)). The *Hartford* decision notes that "the endorsement evinces an intent to provide coverage to the additional insured only for liability that arises while the work is still in progress. An example of such liability would be 'a course of construction work site accident involving bodily injury or property damage.'" *Hartford,* 189 P.3d at 201 (citing *Pardee*, Cal.Rptr.2d at 458).

In the case at hand, the crane had already been erected by NWTC. The fact that the crane was in use at an active construction work site when the accident occurred is sufficient to constitute "ongoing operations" as stated by the endorsement. It is not relevant that the collapse resulted in the impossibility of NWTC's completion of its operations, as argued by Scottsdale. Rather, the controlling fact is that the accident that gave rise to the potential liability occurred while the crane's operation was ongoing during the course of construction.

## B. Defense Costs

### 1. Right to Recover Pre-Suit Costs

Having found that LCL is an additional insured with respect to the Scottsdale policy, the Court now turns to the scope of fees and costs that Arch may recover. Scottsdale argues that pre-suit costs are not recoverable because Scottsdale is not responsible for expenses that were incurred by LCL or Arch prior to the filing of the first suit. (Dkt. #34 at 15). However, there is no authority to support this proposition. The duty to defend is broad and encompasses those expenses that are reasonably related to the defense of a covered claim. *Potomac Elec. Power Co. v. California Union Ins. Co.*, 777 F.Supp. 980 (D.C. 1991). In *Nordstrom v. Chubb*, this court specifically held that "[n]o right of allocation exists for the defense of non-covered claims that are 'reasonably related' to the defense of covered claims." 820 F. Supp. 320, 536 (W.D. Wash. 1992), *aff'd on other grounds*, 54 F.3d 1424 (9th Cir. 1995). Therefore, where the duty to defend necessarily encompasses certain pre-suit expenses, those expenses will not be allocated as distinct.

The issue of whether costs are reasonably related to the defense of covered claims is a factual inquiry. *Potomac*, 777 F. Supp at 985. In this case, Plaintiff Arch has explained that its pre-litigation costs were incurred in storing the remains of the crane, retaining experts to examine the crane in preparation for litigation, making efforts to settle, and advocating for LCL during investigations. Dynan Decl. at ¶¶ 4, 6, 7, 9. Scottsdale does not plead sufficient evidence to raise an issue of fact as to whether the pre-suit costs were reasonably related to the defense of covered claims.

Scottsdale further asserts that Arch may not recover pre-suit expenses because Arch voluntarily paid these costs. An insurer who acts as a volunteer in making payments loses the right to recover contribution from other insurers. *Hartford Ins. Co. v. Ohio Casualty Ins. Co.*,

189 P.3d 195 (2008). An insurer is considered a volunteer if the insurer has no right or interest of its own to protect and is under no obligation to pay. *Id.* However, payments made by an insurer under the threat of civil suit are not considered voluntary, nor is the existence of a possible defense to coverage sufficient to render an insurer's actions voluntary. *Id.*

In this case, Arch's pre-suit expenses cannot be considered voluntary for purposes of determining whether Arch waived its right to subrogation or contribution. Given the situation of the crane collapse, Arch operated under the near certainty that claims and litigation would follow. As LCL was Arch's insured, it cannot be said that Arch had no obligation to make expenditures to facilitate the defense of its insured. Finally, the possibility that Arch was not the primary insurer does not render its actions voluntary.

**2. Right to Recover Pre-Tender Defense Costs**

Scottsdale asserts that Arch cannot recover pre-tender defense costs. However, Washington courts have rejected a rule that disallows the recovery of pre-tender defense costs. *Griffin v. Allstate Ins. Co.*, 29 P.3d 777, 781 (2001). Rather, the duty to defend an insured is defined by contract, and an insurer cannot be released from the duty to defend absent a substantial showing of prejudice as a result of late tender. *Id.* at 782.

As noted *supra*, the language of the additional insured endorsement is construed broadly, and indicates Scottsdale had a broad duty to defend LCL. Furthermore, Scottsdale has not pointed to any facts that show tender was late, or that Scottsdale was prejudiced in any way as a result of late tender.

**3. Right to Recover Fees Paid Post-Judgment**

Scottsdale further disputes whether Arch may recover post-judgment fees, arguing that the duty to defend is terminated upon a judicial declaration regarding the absence of liability on the part of the insured, NWTC. As stated in *Goodstein v. Continental Casualty Co.*, "[a]n

insurer's duty to defend is a continuing one, and does not end until the underlying action is resolved or it is shown that there is no potential for coverage."). 509 F.3d 1042, 1056 (2007) (quoting *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 334 (2002)).

In the present case, when inquiring into the duty to defend, the relevant party who is owed that duty is LCL because LCL is the additional insured of Scottsdale. As long as LCL is an additional insured, it is irrelevant that the policy-holder NWTC was ultimately held not to be liable. Rather, the duty to defend terminates upon the resolution of the underlying claims and litigation against LCL. Because LCL remained an active party in litigation, it cannot be said that Arch's expenses were incurred post-judgment. Therefore, Arch's costs incurred after the dismissal of claims against NWTC may be recovered.

**4. Reasonableness of Fees**

Scottsdale claims that the defense costs incurred by Arch in defending LCL are unreasonable. Washington courts apply the lodestar method to determine reasonableness of attorneys' fees in the absence of a contractually predetermined method. *Crest Inc. v. Costco,* 115 P.3d 349, 356 (2005). "The lodestar approach sets fees by multiplying a reasonable hourly rate by the reasonable number of hours spent on the lawsuit. This method dictates that attorney fees are calculated by establishing a lodestar fee and then adjusting it up or down based on other external factors." *Id*. The determination of whether attorneys' fees are reasonable under specific circumstances is a question of fact. *Schmidt v. Cornerstone Inv., Inc.,* 795 P.2d 1143, 1153 (1990).

The issue of the reasonableness of the costs incurred by Arch cannot be determined on summary judgment. Scottsdale and Arch present conflicting issues of fact as to what constitutes acceptable attorneys fees and costs in this case. (Dkt. #34 at 19-20, Dkt. #41 at 20-25.) This Court cannot weigh such evidence to determine the truth on a motion for summary judgment, but

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

can only determine whether there is a genuine issue of fact for trial. *Crane v. Conoco, Inc.,* F. 3d 547, 549 (9th Cir. 1994).

**5.  *"Olympic Steamship"* Fees**

Arch asserts that it is not seeking recovery of its costs incurred in litigating this action against Scottsdale (Dkt. #41), and therefore Arch makes no claim for *"Olympic Steamship"* fees.

### V. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Arch Insurance Company's Motion for Summary Judgment (Dkt. #30) is GRANTED as to (a) the issue of Arch's policy being excess to the Scottsdale policy; and (b) the issue of LCL's status as an additional insured under the Scottsdale policy.

(2) Scottsdale Insurance Company's Cross-motion for Partial Summary Judgment (Dkt. #34) is DENIED as to (a) the issues stated above; (b) the issue of the scope of Arch's claims for contribution concerning the inclusion of pre-suit costs, pre-tender costs, and post-judgment costs -- these costs are encompassed within the duty to defend as a matter of law; and (c) the issue of the reasonableness of fees and costs. The reasonableness of fees and costs is a question of fact that cannot be determined on motion for summary judgment. As such, the issue of reasonableness of fees and costs is RESERVED for trial.

Dated October 27, 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE